# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOE FRANTATORO, et al., | Civil Action No. 23-53 (WJM) (MAH) |
| Plaintiffs, | |
| v. | OPINION |
| REY E. GRABATO II, et al., | |
| Defendants. | |

## I.  INTRODUCTION

This matter comes before the Court on the United States' motion to intervene and for a stay pending the conclusion of criminal proceedings in *United States v. Thomas Nicholas Salzano, a/k/a "Nick Salzano," and Rey E. Grabato, II*, No. 22-CR-690 (EP) (the "Criminal Case").  D.E. 27.  Defendant Daniel O'Brien has joined in the Government's motion.  D.E. 31.  Plaintiffs oppose the motion.  D.E. 30.  The Court has considered the instant motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth herein, the Court will grant the United States leave to intervene and will stay discovery.  If the procedural posture of the Criminal Case materially changes, either party may move before this Court to lift or modify the stay.

## II.  BACKGROUND

On January 5, 2023, Plaintiffs filed this action against Thomas Nicholas Salzano, Rey E. Grabato, II, Daniel Coley O'Brien, Arthur Scutaro, Arthur Raymond Scutaro, Sr., Arthur Raymond Scutaro, Jr., Olena Budinska, Ivel Turner, Jeff Rosenberg, Mark Korczak, Byron Cartozian, and Brian Harrington (collectively "Defendants").  Compl., D.E. 1, ¶¶ 17-28; First

Am. Compl., D.E. 17.  This lawsuit arises out of Defendants' alleged scheme to defraud investors.  According to the Amended Complaint, in 2006, Defendants formed National Realty Investment Advisors, LLC (the "NRIA") as a real estate investment company.  First Am. Compl., D.E. 17, ¶ 50.  Defendants offered and sold membership units in the NRIA Partners Portfolio Fund I LLC (the "NRIA Fund") to Plaintiffs with the stated purpose of "the development of real estate on property purchased at below-market prices with the goal to develop and sell it for a large profit."  *Id.* ¶ 52.  Plaintiffs allege that Defendants used a nationwide marketing campaign, which investors funded, to portray the NRIA as a financially stable business that generated substantial profits.  *Id.* ¶ 4.  In reality, Plaintiffs allege that NRIA produced minimal earnings.  *Id.*  The marketing campaign allegedly included several material misrepresentations of the NRIA Fund's financial condition, which enabled Defendants to effectuate a Ponzi scheme by allegedly misappropriating millions of dollars from investors to support their own lavish lifestyles.  *Id.*  Thus, Plaintiffs bring causes of action for violations of Section 12(a) of the Securities Act of 1933, Sections 10(b) and 15(c) of the Securities Exchange Act of 1934, and SEC Rule 10b-5 promulgated thereunder, violations of the New Jersey Uniform Securities Act (N.J.S.A. § 49:3-52(a)-(c)), and common law claims for fraud, negligent misrepresentations, and unjust enrichment.  *Id.* ¶¶ 125-174.

On October 12, 2022, and therefore before Plaintiffs filed this action, a federal grand jury returned an eighteen-count Indictment charging Defendants Nicholas Salzano and Rey E. Grabato, II for conspiring to defraud NRIA investors and the Internal Revenue Service ("IRS") out of millions of dollars.  *See* Indictment, *United States v. Salzano*, No. 22-CR-690, D.E. 19.  The Indictment alleges violations of, *inter alia*, 18 U.S.C. §§ 371, 1343, and 1028A, as well as 15 U.S.C. § 78(j)(b) and (ff) and tax offenses.  The factual allegations underlying the Indictment

2

resemble the conduct alleged in this action, including material misrepresentations and omissions made in order to operate the NRIA Fund as a Ponzi scheme, as well as the misappropriation of millions of dollars from investors. *Id.* ¶ 2. On October 12, 2022, Salzano was arrested in relation to the Indictment and was later released on bail. Am. Order Setting Conditions of Release, *United States v. Salzano*, No. 22-CR-690, D.E. 47. Grabato is yet to be apprehended.[1] The United States has moved for leave to intervene in this action pursuant to Federal Rule of Civil Procedure 24. Gov't's Moving Br., D.E. 27-1, at 7-11. The Government further requests this Court stay all proceedings until the conclusion of the Criminal Case. *Id.* at 11-17. Defendant Daniel Coley O'Brien ("O'Brien") joins the Government's motion to stay this matter. O'Brien Ltr. in Supp., D.E. 31. Plaintiffs oppose the Government's request for a blanket stay and alternatively argue that the Government is entitled to, at most, a partial stay whereby the civil case would proceed against those civil defendants who have not been charged in the Criminal Case. Pls.' Opp'n., D.E. 30, at 4-5. For the reasons that follow, the Court will grant the Government's motion to intervene and to stay the civil case pending resolution of the Criminal Case.

---

[1] On October 13, 2022, Arthur S. Scutaro ("Scutaro") entered a guilty plea to an Information charging him with conspiracy to commit securities fraud in connection with the same scheme alleged in the Indictment. *See* Plea Agreement, *United States v. Scutaro*, 22-CR-692, D.E. 5. On the same day, the Securities & Exchange Commission filed a complaint against the NRIA, Grabato, Salzano, Scutaro, and O'Brien for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. *See Sec. & Exch. Comm'n v. NRIA*, 22-CV-6066, Compl., D.E. 1. On February 6, 2023, Judge Kiel granted the Government's motion to stay discovery in the SEC action. *Id.* at D.E. 37.

III.    **ANALYSIS**

    1.    **Motion to Intervene**

Federal Rule of Civil Procedure 24(a)(2) governs intervention of right and provides, in relevant part, that:

> On a timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). To intervene as a matter of right under Rule 24(a)(2), a potential intervenor must show "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *United States v. Terr. of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (quotation omitted). If all four factors are satisfied, the Court must permit intervention. *Id*.

The Court finds that all four criteria are met. First, the motion to intervene is timely. In determining timeliness, courts consider the following factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). This matter is still in its earliest stages. The Government filed the instant motion approximately two months after Plaintiffs filed their Amended Complaint. Gov't's Moving Br., D.E. 27-1; First Am. Compl., D.E. 17. Further, the Government moved to intervene before any party filed a responsive pleading.[2] *See Sec. & Exch. Comm'n v. Ott*, Civ. No. 06-4195, 2006 WL 8462454, at

---

[2] The parties stipulated to extend the deadline for Defendants to answer, move, or otherwise respond to the Amended Complaint to May 18, 2023. *See* Stipulation Extending Time to Respond to Am. Compl., D.E. 24.

4

*2 (D.N.J. Nov. 30, 2006) (finding motion to intervene was timely because it was filed before any responsive pleading). Additionally, Plaintiffs do not argue any prejudice regarding the timeliness of the motion to intervene, and there is no evidence to suggest the Government delayed in seeking intervention. Pls.' Opp'n., D.E. 30. Therefore, the Court finds the Government's motion is timely. *See Sec. & Exch. Comm'n v. Manor*, Civ. No. 20-597, 2020 WL 3446306, at *2 (D.N.J. June 24, 2020) (finding the government's motion to intervene as timely when the civil action was in its earliest stages and the government moved to intervene approximately three months after the civil action was filed).

Second, the Government has demonstrated a sufficient interest in this action because the ongoing parallel Criminal Case involves "the same business practices, contracts and payments at issue in this matter." *Sec. & Exch. Comm'n v. Ott*, 2006 WL 8462454, at *2. The issues present in this action and the Criminal Case substantially overlap. Both cases allege that Defendants operated a Ponzi scheme by misrepresenting to potential investors the financial condition of both the NRIA and the NRIA Fund from approximately February 2018 through January 2022. First Am. Compl., D.E. 17, ¶¶ 1, 2; Indictment, at ¶¶ 1, 2, *United States v. Salzano*, No. 22-CR-690, D.E. 19. Additionally, both cases allege that Defendants misappropriated investor money to fund their own lavish lifestyles. First Am. Compl., D.E. 17, ¶ 4; Indictment, *United States v. Salzano*, No. 22-CR-690, D.E. 19, ¶ 2. The substantial overlap demonstrates that the Government has a sufficient interest warranting intervention.

The Court is also satisfied that the Government has articulated a tangible threat to a legally recognized interest. An intervenor must possess a "significantly protectable" legal interest as opposed to an interest of a general and indefinite character. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d at 366. To show that intervention is

appropriate, an intervenor must demonstrate a tangible threat to this legally recognized interest. *Id.* In this case, the Government has identified such an interest—specifically, it seeks to limit Defendants, for purposes of the Criminal Case, to the discovery that is available under the Federal Rules of Criminal Procedure. Given the substantial overlap between this action and the Criminal Case, the Government has an interest in seeking to prevent the use of discovery in this action as a means to bypass the narrower scope of discovery in the Criminal Case. *Sec. & Exch. Comm'n v. Manor*, 2020 WL 3446306, at *2 (quoting *Sec. & Exch. Comm'n v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988)); *see also United States v. Mellon Bank, N.A.*, 545 F.2d 869, 873 (3d Cir. 1976) (finding that the district court did not abuse its discretion in staying the civil action because there was a possibility that the defendant may exploit civil discovery to advance his criminal case due to the substantial overlap in the civil matter and the criminal case).

Fourth, the Government's interest is not adequately represented by the existing parties to this litigation. The discovery efforts in this action have the possibility of conflicting with the Government's ongoing criminal prosecution. The parties to the civil action might very well seek discovery that would bear on the Government's investigation and prosecution, as well as the Defendants' ability to defend themselves in the Criminal Case. A salient example is if the Plaintiffs seek to depose the Defendants concerning the fraud and misrepresentation allegations. Those deposition questions would almost certainly implicate the Defendants' Fifth Amendment rights. Further, if the Court does not stay discovery, Defendants may be able to obtain discovery from the Government that they are not otherwise entitled to at this point in the criminal litigation. *See Sec. & Exch. Comm'n v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (per curiam) (recognizing that "[t]he government ha[s] a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the [parallel]

6

criminal matter"). Thus, this factor also weighs in favor of the Government's request to intervene. *See Sec. & Exch. Comm'n v. Manor*, 2020 WL 3446306, at *2 (finding the government's interests not adequately represented when the parties in the civil action had distinct and conflicting interests); *Sec. & Exch. Comm'n v. Berman*, Civ. No. 20-10658, 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021) ("[T]he parties to this civil litigation do not represent the Government's interest with respect to the investigation and enforcement of federal criminal statutes.").

Accordingly, the Court shall grant the Government's motion to intervene in this action.[3] The Court next turns to the Government's request to stay discovery pending the conclusion of the Criminal Case, and Plaintiffs' opposition.

### 2. Motion to Stay

Although a stay is considered an "extraordinary remedy" and is generally unfavored, district courts have the discretion to stay a civil proceeding if the "interests of justice so require." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010) (citation omitted). In the context of parallel civil and criminal proceedings, a stay "may be warranted in certain circumstances." *Walsh Sec. Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998). For example, courts have found stays appropriate where denial would impair a party's Fifth Amendment privilege, extend the limits of criminal discovery, expose the defense's legal theories, or otherwise prejudice the criminal case. *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995); *Cress v. City of Ventnor*,

---

[3] As the Government has satisfied the requirements for intervention as of right under Rule 24(a)(2), the Court need not consider the Government's alternate argument for permissive intervention under Rule 24(b).

Civ. No. 08-1873, 2009 WL 750193, at *3 (D.N.J. Mar. 18, 2009); *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010).

> In determining whether to grant a stay, the court considers the following factors:
>
> (1) the extent to which the issues in the criminal and civil cases overlap;
>
> (2) the status of the case, including whether the defendants have been indicted;
>
> (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay;
>
> (4) the private interests of and burden on defendants;
>
> (5) the interests of the court; and
>
> (6) the public interest.

*Walsh*, 7 F. Supp. 2d at 526-27.  The Court addresses each of these factors in turn.

### a. Extent of Overlap in the Criminal and Civil Cases

The extent to which the criminal and civil cases overlap is the most important threshold issue in considering whether to grant a stay. *Walsh*, 7 F. Supp. 2d at 527.  Courts ordinarily grant a stay of discovery pending resolution of a parallel criminal matter when both the civil and criminal actions stem from the same or interrelated events. *Ott*, 2006 WL 8462454, at *3.  As previously explained, the Criminal Case and this action involve the same fraudulent scheme involving the same parties for the same time period.  Therefore, the Criminal Case and this action are likely to include the same, or at least overlapping, witnesses and documents. *United States v. All Articles of Other-Sonic Gneric Ultrasound Transmission Gel*, Civ. No. 12-2264, 2013 WL 1285413, at *2 (D.N.J. Mar. 27, 2013) (finding overlap in parallel civil and criminal proceedings because the same conduct was relevant to both cases, and it was likely they would share common witnesses and documents).  Thus, the Court finds the first factor weighs in favor

of a stay.

### b. Status of Parallel Criminal Case

The second factor concerns the status of the criminal proceeding. Courts generally find that the most compelling consideration for granting a stay in a civil case is whether a grand jury has returned an indictment, because the return of that indictment poses a greater potential for self-incrimination. *Walsh*, 7 F. Supp. 2d at 527. Further, the harm to civil litigants resulting from a delay is reduced due to the promise of a speedy trial. *Id; see also* 18 U.S.C. § 3161(c)(1).

Both Salzano and Grabato were indicted on October 12, 2022, and the District Court in that matter has scheduled a trial date of March 5, 2024. Nonetheless, Plaintiffs contend that a stay would be improper because several Defendants in the civil matter have not been indicted. Therefore, Plaintiffs reason, the Court could limit the stay to Salzano and Grabato, and allow the civil litigation to proceed against the remaining Defendants. *See* Pls.' Opp'n., D.E. 30, at 3-4.

Generally, stays are appropriate where, as here, the factual allegations and legal issues in the civil and criminal cases are "so closely intertwined." *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, Civ. No. 11-00785, 2011 WL 5416058, at *4 (D.N.J. Nov. 4, 2011). Of course, in those cases, and where the criminal case has been indicted, a defendant's risk of self-incrimination is particularly acute. *Id.* Here, if discovery were to proceed in this action, Salzano and Grabato will be required to respond to discovery requests. Salzano and Grabato are the key individuals in both the criminal and civil cases, because their conduct forms the basis for both the criminal charges pending against them, as well as Plaintiffs' claims against them here. They will be required to either waive their Fifth Amendment rights to defend themselves or invoke the right and suffer any adverse inferences. *See Colombo*, 2011 WL 5416058, at *5; *Walsh*, 7 F. Supp. 2d at 527. Additionally, if this case proceeds, they may be compelled to reveal their

9

defenses to the criminal charges. Therefore, this factor weighs in favor of a stay because there is a substantial risk that discovery responses may implicate Salzano and Grabato's Fifth Amendment rights against self-incrimination in that this action and the Criminal Case are "so closely intertwined." *See Colombo*, 2011 WL 5416058 at *4 (D.N.J. Nov. 4, 2011) (finding that this factor weighs in favor of a stay where an indictment has been returned because of the possible implication of Fifth Amendment rights); *In re Adelphia Commc'ns Sec. Litig.*, Civ. No. 02-1781, 2003 WL 22358819, at *4 (E.D. Pa. May 13, 2003).

      Plaintiffs alternatively argue that this Court should grant, at most, a partial stay and allow discovery to proceed against those civil Defendants who have not been charged in the Criminal Case. Pls.' Opp'n., D.E. 30, at 4-5. The Government argues that although the unindicted civil Defendants have not been charged, they "may have been a part of or privy to" the securities-fraud conspiracy charged in the Indictment and thus, face the same concerns regarding self-incrimination. Gov't's Moving Br., D.E. 27-1, at 15. This Court finds that because the unindicted Defendants may have been privy to, and Plaintiffs' allegations against them are "so closely intertwined" with, the criminal conspiracy charged in the Criminal Case, the unindicted Defendants also may have their Fifth Amendment rights implicated upon a request to testify or respond to discovery in this action. Indeed, Plaintiffs themselves allege that that the unindicted Defendants, along with Salzano and Grabato, solicited funds from investors under the pretense of investing in real estate development. First Am. Compl., D.E. 17, ¶ 52. But, the First Amended Complaint alleges, the civil Defendants instead used those funds "to pay distributions to prior investors, fund the Salzano family's luxurious lifestyle, and pay reputation management firms to clean Defendants' history tainted with previous frauds." *Id.* ¶ 53. Plaintiffs also claim that Salzano and Grabato, together with the unindicted Defendants, sold more than $600 million in

securities, styled as "membership units" in the NRIA Fund, so that they could carry out a Ponzi scheme and commit securities fraud. *Id.* ¶ 54. By Plaintiffs' own allegations, it appears that the unindicted Defendants may have criminal exposure. Thus, this Court's concerns detailed above remain the same.

Therefore, even if the Court limited the stay to Salzano and Grabato, discovery would raise difficult Fifth Amendment concerns as to the unindicted civil Defendants. For example, if the unindicted civil Defendants assert the Fifth Amendment privilege, they will not have an opportunity to fully defend themselves in this case. *See Walsh*, 7 F. Supp. 2d at 528 (noting that a stay prevents defendants from having "to choose between waiving their Fifth Amendment rights and defending themselves in the civil lawsuit or asserting the privilege and probably losing the civil case."). Similarly, because Salzano's and Grabato's conduct is crucial to discovery, their testimony and responses to discovery will be essential in resolving this case. Such discovery is important not merely to understanding each civil Defendant's respective role in the alleged fraud, but also their interactions and relationships with each other as part of the alleged conspiracy. Accordingly, depriving the unindicted Defendants of discovery from Salzano and Grabato might stymy the former's ability to mount a proper defense. *See In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819, at *5 (finding unindicted civil defendants faced prejudice after indicted defendants invoked Fifth Amendment privilege because the civil and criminal cases centered around the conduct of the indicted defendants).

      c.      **Prejudice to Plaintiffs**

Plaintiffs contend they would be prejudiced by a stay because it would jeopardize their ability to preserve evidence as memories fade and documents are misplaced. Pls.' Opp'n., D.E. 30, 5. Plaintiffs also assert that a delay could eliminate their ability to obtain relief because

11

several of the Plaintiffs are elderly and suffer from various health conditions. *Id.* Moreover, Plaintiffs maintain that a stay could impair their ability to obtain a full recovery of their damages because there is a serious risk that Defendants will misappropriate funds, thereby reducing Plaintiffs' potential recovery. *Id.* at 5-6.

But the prejudice element requires a party opposing a stay to show more than mere delay. *In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 223588189, at *4. Delays in civil cases are hardly uncommon. *Walsh*, 7 F. Supp. 2d at 528. Therefore, Plaintiffs instead must assert a "particularly unique injury," which may consist of an attempted unfair advantage or the dissipation of assets. *Id.* Plaintiffs allege various potential injuries, *i.e.*, risk of misappropriation, elderly Plaintiffs, and fading memories. However, the stay will be for only a limited duration, as trial in the Criminal Case is scheduled for March 5, 2024. Trial Scheduling Order, *United States v. Salzano*, No. 22-CR-690, D.E. 48. Thus, any resulting delay or prejudice would be minimal. *See Walsh*, 7 F. Supp. 2d at 528. Moreover, Plaintiffs fail to point to any specific evidence to show that Defendants are misappropriating assets. See *In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 223588189, at *4. Plaintiffs similarly make no specific allegation of misplaced documents and, in any event, have the ability to serve preservation notices on the Defendants. Further, Federal Rule of Civil Procedure 37(e) imposes stringent preservation obligations and formidable sanctions for failure to comply. Accordingly, the absence of prejudice to Plaintiffs weighs in favor of a stay.

        d.      **Prejudice to Defendants**

With respect to the fourth factor, the Government argues that a stay is in the interests of the indicted Defendants, as well as the unindicted Defendants who may have been a part of, or privy to, the charged conspiracy. Gov't's Moving Br., D.E. 27-1, 16. Defendant O'Brien also

asserts that he would be significantly prejudiced if either full or limited discovery was to proceed. O'Brien Ltr. in Supp., D.E. 31. The Court agrees, for largely the same reasons as described in Section 2b. Defendants Salzano and Grabato, and the unindicted defendants, would face substantial risks of self-incrimination should this matter proceed. *See Walsh*, 7 F. Supp. 2d at 528. Moreover, if a partial stay is granted and discovery is permitted to proceed against the unindicted Defendants, it would likely result in piecemeal litigation. *See Colombo*, 2011 WL 5416058, at *6 (declining to enter a partial stay, instead staying the case in its entirety, to avoid piecemeal litigation because discovery with regard to unindicted defendants would likely be impeded or affected when the indicted defendant invoked his Fifth Amendment privilege). Relatedly, there is a significant risk that this Court will be faced with repeated discovery disputes regarding whether Defendants have properly invoked their privilege. *See Walsh Sec., Inc.*, 7 F. Supp. 2d. at 527-28 (noting that debate regarding what type of inquiries in discovery would implicate the Fifth Amendment "foreshadow[s] the many disagreements that will undoubtedly arise to complicate interrogatory discovery"). Additionally, there is a risk of inconsistent rulings if this Court is called upon to resolve issues common to both the Criminal Case and this action. *See SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (finding a risk of inconsistent judgments where the civil and criminal actions are so intertwined that common issues exist in both actions). Therefore, the Defendants will collectively suffer prejudice if the Court does not grant a complete stay. *See In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819, at *5. Thus, the Court finds that this factor weighs in favor of a stay with regard to all of the parties.

    e.  **Interests of the Court**

  Plaintiffs argue there is no way to predict how long the stay would be in effect if granted and there are commonly delays in criminal trials. Pls.' Opp'n., D.E. 30, 5. But as the Court

already found, a stay would not be indefinite.  Trial Scheduling Order, *United States v. Salzano*, No. 22-CR-690, D.E. 48.  Additionally, the Court has an interest in managing its cases efficiently.  *Walsh*, 7 F. Supp. 2d at 528.  Absent a stay, the Court would be burdened by numerous challenges of privilege during the discovery process.  Considering the substantial overlap between the parallel criminal and civil proceedings, there is the chance for duplicative efforts and conflicting rulings.  *Sec. & Exch. Comm'n v. Schiff*, Civ. No. 05-4132, 2006 WL 2690266 (D.N.J. Sept. 19, 2006) (holding that a stay would promote judicial efficiency as the criminal prosecution would address, resolve, and clarify some of the common issues).  Therefore, this factor weighs in favor of a stay.

      **f.**     **Public Interest**

Generally, the grant of a stay of a civil case does not harm the public interest.  *Walsh*, 7 F. Supp. 2d at 529.  Plaintiffs contend that the public has an interest in expeditious resolution of civil actions.  Pls.' Opp'n., D.E. 30, 5.  However, the public has a greater interest in the Government's ability to enforce and investigate criminal activity.  *Colombo*, 2011 WL 5416058, at *6.  Substantial weight should be given to the public interest in a criminal case which supersedes a civil litigant's interest in a timely resolution of their civil claims.  *All Articles of Other-Sonic Gneric Ultrasound Transmission Gel*, 2013 WL 1285413, at *4.  Therefore, the Court finds that allowing an unimpeded criminal prosecution outweighs any prejudice that may occur as the result of a delay.

**III.   CONCLUSION**

For the foregoing reasons, the Court grants the United States' motion to intervene and for a stay.  If circumstances change, either party may move before this Court to lift or modify the stay.  Additionally, the Court will require that the parties submit a joint status report on or before

December 31, 2023, to allow the Court to determine whether the stay should be revisited. An appropriate Order will follow.

<i>s/ Michael A. Hammer</i><br>
<b>United States Magistrate Judge</b>

**Dated**: August 30, 2023